UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:08-CR-150 |
| | ) | (VARLAN/GUYTON) |
| ERIC HIGGINS, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

All pretrial motions in this case have been referred to the undersigned pursuant to 28 U.S.C. § 636(b) for disposition or report and recommendation regarding disposition by the District Court as may be appropriate. This case is now before the undersigned for a report and recommendation regarding disposition of the Defendant's Motion to Suppress Wiretap [Doc. 36], Motion to Suppress [Doc. 37], and Motion to Suppress Stop [Doc. 38] filed on May 8, 2009. The parties appeared before the undersigned for a hearing on the three suppression motions on January 26, 2010.[1] Assistant United States Attorney Tracy Stone was present on behalf of the Government. Attorney Kevin Angel was present on behalf of the Defendant, who was also present. At the conclusion of the hearing, the Court granted the Defendant until February 19, 2010, to file supplemental memoranda. On February 19, 2010, the Defendant moved [Doc. 57] for an extension of this

---

[1] The Defendant moved to continue the hearing on his suppression motions on five separate occasions. See [Docs. 40, 44, 47, 52, 54]. The Court has previously determined that all of the time between May 8, 2009, when the suppression motions were filed, and the date of this report and recommendation is fully excludable time for the purposes of the Speedy Trial Act. See [Docs. 46 and 51]; 18 U.S.C. § 3161.

deadline. On February 22, 2010, the Court granted [Doc. 58] the Defendant until March 12, 2010, to file supplemental memoranda. The Defendant did not file anything by this deadline.

The Court addresses the Defendant's three motions in turn.

## I. THE DEFENDANT'S MOTION TO SUPPRESS WIRETAP

The Defendant's Motion to Suppress Wiretap [Doc. 36] asks the Court to suppress all evidence that was obtained in this case as a result of the interception of wire communications over two cellular telephones subscribed to the Defendant. The Defendant argues that the interception of wire communications over his cellular telephones was unlawful for two reasons. First, the Defendant argues that the applications for orders authorizing the interception of his wire communications were insufficient under 18 U.S.C. § 2518 because they only contained "conclusory statements without facts or support as to why ordinary means of investigation would fail." [Doc. 36 at 1]. Second, the Defendant argues that there was not probable cause to justify the orders authorizing the interception of his wire communications. [Doc. 36 at 1]. The Defendant argues that the proper remedy for the Government's unlawful interception of his communications is the suppression of any evidence obtained as a result of that interception. See [Doc. 36 at 3] (stating that the Government's "[f]ailure to comply" with 18 U.S.C. § 2518 "is grounds for suppression") (citing United States v. Ojeda-Rios, 495 U.S. 257 (1990)); [Doc. 36 at 7-8] (arguing that because electronic eavesdropping "can comply with constitutional standards only when authorized by a neutral and detached magistrate upon a showing of probable cause," the lack of probable cause to support an order authorizing a wiretap requires suppression of any evidence obtained as a result of the wiretap) (quoting Desist v. United States, 394 U.S. 244, 246 (1968)).

In response, the Government flatly denies the Defendant's allegations "that the wiretap was unnecessary," that it failed to comply with the wiretapping statute, and that the orders authorizing the wiretap were "not supported by probable cause." [Doc. 39 at 1]. The Government avers that it cannot respond more specifically because it has been unable to "divine" the Defendant's arguments from the "near nothingness" that was provided in his Motion and presented at the hearing on January 26, 2010. [Doc. 39 at 2]. The Government states that the Defendant's Motion is "frivolous" and should be denied because it fails to include "specific references to the facts of [this] case, the would-be offending portions of the Application, Affidavit, and/or Order, an application of the law to the facts of [this] case or portions of the wiretap documents, and some kind of legal argument incorporating both the reference facts and law." [Doc. 39 at 2].

### A. Facts

On March 24, 2006, Assistant United States Attorney David Jennings filed under seal an Application for Order Authorizing Interception of Wire Communications. [Exhibit 1]. The Application sought authorization to tap a cellular telephone subscribed to the Defendant. The Application was supported by the Affidavit of Drug Enforcement Administration ("DEA") Special Agent Bethel Poston. [Exhibit 1]. After reviewing the Application and accompanying Affidavit, the Honorable James Jarvis, United States District Judge, issued an Order pursuant to 18 U.S.C. § 2518 authorizing the interception of communications made over the target cellular phone for a period of thirty days. [Exhibit 1].

On April 14, 2006, Assistant United States Attorney Steven Cook filed under seal a second Application for Order Authorizing Interception of Wire Communications. [Exhibit 2]. The

Application sought authorization to tap a second cellular telephone subscribed to the Defendant. The Application was supported by another Affidavit of Agent Bethel Poston. [Exhibit 2]. After reviewing the Application and accompanying Affidavit, Judge Jarvis issued an Order pursuant to 18 U.S.C. § 2518 authorizing the interception of communications made over the second target cellular phone for a period of thirty days. [Exhibit 2].

On April 21, 2006, Assistant United States Attorney David Jennings filed under seal an Application for authorization to extend the wiretap of the Defendant's first cellular phone for an additional thirty day period. [Exhibit 3]. The Application was supported by yet another Affidavit of Agent Bethel Poston. [Exhibit 3]. After reviewing the Application and accompanying Affidavit, Judge Jarvis issued an Order pursuant to 18 U.S.C. § 2518 authorizing the interception of communications made over the first target cellular phone for an additional period of thirty days. [Exhibit 3].

### B. Analysis

The Defendant makes two arguments that the interception of his wire communications pursuant to the three Orders discussed above was unlawful. The Court addresses these arguments in turn.

*1. The Applications for orders authorizing the interception of the Defendant's communications over two cellular telephones satisfied the requirements of 18 U.S.C. § 2518.*

The Defendant argues that the three Applications for orders authorizing the interception of his wire communications were insufficient under 18 U.S.C. § 2518 because they only contained

"conclusory statements without facts or support as to why ordinary means of investigation would fail." [Doc. 36 at 1]. The Defendant argues that authorizing the interception of his communications on the basis of insufficient Applications was unlawful. He concludes that the proper remedy for the unlawful interception of his communications is the suppression of any evidence obtained as a result of that interception. See [Doc. 36 at 3] (stating that the Government's "[f]ailure to comply" with 18 U.S.C. § 2518 "is grounds for suppression") (citing Ojeda-Rios, 495 U.S. 257); [Doc. 36 at 5] ("The failure of the Government to comply with the statutory requirements for intrusive search techniques, such as wiretaps and bugs, results in the suppression of the evidence obtained.") (citing United States v. Gray, 521 F.3d 514 (6th Cir. 2008)); [Doc. 36 at 8] (citing United States v. Wac, 498 F.2d 1227 (6th Cir. 1974), as holding that the Government's failure to comply with proper procedures for obtaining a wiretap warrant requires suppression of the evidence obtained from the wiretap).

The Government responds by simply denying that the Applications were insufficient and that the wiretap was unnecessary. [Doc. 39 at 1] ("the United States denies each and every substantive allegation contained in the [Defendant's suppression] motions"). For the following reasons, the Court finds that the Defendant's argument is without merit.

Title 18, United States Code, Section 2518(1)(c) requires that an application for an order authorizing the interception of a wire communication must include "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(1)(c). This requirement is "simply designed to assure that wiretapping is not resorted to in situations where traditional investigative techniques would suffice to expose the crime." United States v. Kahn, 415

U.S. 143, 153 n.12 (1974). Thus, an application satisfies Section 2518(1)(c) if it serves to inform the court to which it is made "of the reasons for the investigators' belief that non-wiretap techniques have been or will likely be inadequate." United States v. Lambert, 771 F.2d 83, 91 (6th Cir. 1985). The Government is not required to prove in an application that "every other conceivable method [of investigation] has been tried and failed or that all avenues of investigation have been exhausted." United States v. Alfano, 838 F.2d 158, 163 (6th Cir.), cert. denied, 488 U.S. 910 (1988); see also Lambert, 771 F.2d at 91 (stating that 18 U.S.C. § 2518(1)(c) and (3)(c) "do not require that the police officials exhaust every conceivable non-wiretap investigative technique," and explaining that "[a]ll that is required is that the investigators give serious consideration to the non-wiretap techniques prior to applying for wiretap authority").

Whether an application satisfies Section 2518(1)(c) must be determined "'in a practical and common sense fashion.'" United States v. Rice, 478 F.3d 704, 717 (6th Cir. 2007) (quoting United States v. Landmesser, 553 F.2d 17, 20 (6th Cir. 1977) ("Congress intended that the showing envisioned by § 2518(1)(c) be tested 'in a practical and common sense fashion'") (citation omitted)). An application supported by "a purely conclusory affidavit unrelated to the instant case and not showing any factual relations to the circumstances at hand" would not comply with the statute. Landmesser, 553 F.2d at 20. But the mere fact that an application's supporting affidavit rests *in part* on general statements of the affiant's prior experience with various non-wiretap investigative procedures does not render the application insufficient. See id. (stating that "the prior experience of investigative officers is indeed relevant in determining whether other investigative procedures are unlikely to succeed if tried").

In this case, each of the three challenged Applications was supported by an affidavit of DEA

-6-

Special Agent Bethel Poston. Each of Poston's affidavits thoroughly described the reasons for his belief that non-wiretap techniques were, and would likely continue to be, inadequate. [Exhibit 1, Poston Affidavit, paras. 33-60]; [Exhibit 2, Poston Affidavit, paras. 28-49]; [Exhibit 3, Poston Affidavit, paras. 33-60]; see Lambert, 771 F.2d at 91. Each affidavit provided the Court "with a detailed outline of the activities which led to" each Application, and gave the Court "the ample opportunity to understand just what witnesses were involved, which ones were confidential informers, what they knew and what they did not know, and what their relationship to the case and to the Defendant was." Landmesser, 553 F.2d at 20-21. Accordingly, the Court rejects the Defendant's argument that Poston "only made conclusory statements without facts or support as to why ordinary means of investigation would fail." [Doc. 36 at 1]. The Court finds that the Applications for orders authorizing the interception of the Defendant's communications over two cellular telephones satisfied the requirements of 18 U.S.C. § 2518(1). The Court therefore concludes that no evidence should be suppressed in this case on the basis of the Defendant's first argument.

> 2. *The Orders authorizing the interception of the Defendant's communications over two cellular phones were supported by the existence of probable cause.*

The Defendant argues that the interception of his wire communications was unlawful because there was not probable cause to justify the Orders authorizing that interception. [Doc. 36 at 1]. He argues that the proper remedy for the purportedly unlawful interception of his communications is the suppression of any evidence that was obtained as a result. [Doc. 36 at 7-8] (arguing that because electronic eavesdropping "can comply with constitutional standards only when authorized by a neutral and detached magistrate upon a showing of probable cause," the lack of probable cause to support an order authorizing a wiretap requires suppression of any evidence obtained as a result of

the wiretap) (quoting Desist, 394 U.S. at 246).

The Government again responds simply by denying the Defendant's allegation that the Orders authorizing the wiretaps in this case were not supported by probable cause. For the following reasons, the Court finds that the Defendant's argument is without merit.

A finding of probable cause to support a wiretap is sufficient only if it meets the statutory requirements of Section 2518(3) *and* conforms with the general meaning of "probable cause" articulated in Fourth Amendment jurisprudence. See Desist, 394 U.S. 244, 246 (1969) ("since every electronic eavesdropping upon private conversation is a search or seizure, it can comply with constitutional standards only when authorized by a neutral magistrate upon a showing of probable cause"). In United States v. Alfano, 838 F.2d 158, 161-62 (6th Cir. 1988), the Court of Appeals for the Sixth Circuit explained the standard for reviewing an order authorizing a wiretap to ensure that it was supported by probable cause:

> The basic standards for a wiretap are similar to those for a search warrant, but there also must be strict compliance with Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510-2520. That Act was enacted for the purpose of regularizing and controlling the issuance of warrants for wiretaps. At the same time, we are instructed that there is no specific formula that must be met for a warrant, and that evidence must be judged on the totality of the circumstances and in a reasonable and common sense manner. Under this standard, the question that must be decided in issuing a warrant is whether there is probable cause to believe that evidence of a crime will be uncovered.
>
> Obviously, certainty is not required at this stage, and the exact quantum of support required has frequently been described as "a fair probability," but more than a "mere suspicion," that such evidence will be discovered. Facts can amount to a fair probability without being proof beyond a reasonable doubt or even a *prima facie* showing. Since the issuing judge is in the best position to determine all of the circumstances in the light in which they may appear at the time, "great deference" is normally paid to the determination of an

> issuing judge. "Reasonable minds frequently may differ on the question whether a particular affidavit establishes probable cause, and we have thus concluded that the preference for warrants is most appropriately effectuated by according 'great deference' to a magistrate's determination." Thus, the fact that a later trial judge or reviewing court may feel that a different conclusion was appropriate does not require, nor even authorize, the suppression of evidence gained through such a warrant. In United States v. Lambert, we held that a magistrate's determination on the question of probable cause will not be reversed if the record contains a "substantial basis for his probable cause findings."

(internal citations omitted).

Title 18, United States Code, Section 2518(3) provides that a judge may enter an ex parte order authorizing or approving a wiretap if he determines that there is probable cause to believe (1) "that an individual is committing, has committed, or is about to commit a particular offense enumerated in section 2516 of this chapter"; (2) "that particular communications concerning that offense will be obtained through" the wiretap; and (3) "that the facilities from which, or the place where, the wire, oral, or electronic communications are to be intercepted are being used, or are about to be used, in connection with the commission of such offense, or are leased to, listed in the name of, or commonly used by such person." 18 U.S.C. § 2518(3)(a), -(b), and -(d).

In this case, the Orders authorizing the interception of the Defendant's communications over two cellular phones clearly included probable cause findings. [Exhibits 1, 2, and 3]. Those findings plainly meet the requirements of Section 2518(3), and they conform with the general meaning of "probable cause" as articulated in Fourth Amendment jurisprudence. The Defendant has not provided the Court with any reason to find that Judge Jarvis's determination on the question of probable cause should be reversed. The Affidavits of Agent Poston contain a "substantial basis" for Judge Jarvis's probable cause findings. See Alfano, 838 F.2d at 162. Accordingly, those findings

should not be disturbed. Id. The Court concludes that no evidence should be suppressed in this case on the basis of the Defendant's second argument.

## II. THE DEFENDANT'S MOTION TO SUPPRESS

The Defendant's Motion to Suppress [Doc. 37] asks the Court to suppress all of the statements he made to law enforcement officers and attorneys representing the Government. The Defendant avers that he relied on the advice of counsel when choosing to cooperate with the Government by making statements concerning this case. The Defendant argues that this advice was bad–so bad, in fact, that it amounted to ineffective assistance of counsel. The Defendant asserts that "but for the ineffective assistance of counsel," he would not have made any statements to the Government. [Doc. 37 at 2]. The Defendant concludes that his Sixth Amendment right to effective assistance of counsel was violated, and that "the only remedy" for this violation is the suppression of "all statements made by [him] and evidence gathered as a result of said statements." [Doc. 37 at 2].

In response, the Government points out that "the Defendant fails to mention that all of [his] statements to law enforcement were protected under a written Kastigar agreement between the parties which prohibits their use by the Government unless the Defendant testifies inconsistently with those statements." [Doc. 39 at 2]. The Government argues that "there are no statements by the Defendant which are even subject to suppression" because all of the Defendant's statements are already inadmissible at trial per the "Kastigar agreement."[2] [Doc. 39 at 2]. Thus, the Government

---

[2] The so-called "Kastigar agreement" takes its name from Kastigar v. United States, 406 U.S. 441 (1972).

concludes that the Defendant's Motion to Suppress should be denied as moot.

The Court finds that the Defendant's Motion is without merit. First, the Defendant cannot establish at this juncture that he has been deprived of his Sixth Amendment right to receive the effective assistance of counsel. An ineffective assistance of counsel claim is retrospective; to prevail, a defendant must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 694 (1984); see also United States v. Daniel, 956 F.2d 540, 543 (6th Cir. 1992) ("Ineffective assistance of counsel claims are best brought by a defendant in a *post-conviction proceeding* under 28 U.S.C. § 2255 so that the parties can develop an adequate record on the issue.") (emphasis added). The result of this case remains unknown at this point. The Defendant has not entered a guilty plea, and this case is proceeding to trial. In short, he has not "lost" this case. Thus, it is impossible for him to establish at this point that the advice he received from counsel "caused him to lose what he otherwise would probably have won." United States v. Morrow, 977 F.2d 222, 229 (6th Cir. 1992).

Second, pursuant to the Defendant's "Kastigar agreement" with the Government, any statements that the Defendant made to law enforcement officers and attorneys for the Government are inadmissible as substantive evidence of his guilt in this case.[3] [Exhibit 5] ("First, except as

---

[3] The Defendant's statements may be admissible at his trial, or at any other proceeding, for the purpose of impeaching him if he testifies. [Exhibit 5] ("in the event your client is a witness at any trial or other proceeding and offers testimony materially different from any statements or other information provided during the proffer or discussion, the attorney for the government may cross-examine your client and present evidence concerning any statements or other information provided during the proffer or discussion"). This would be true even if the Court granted the Defendant's Motion to Suppress Statements. See United States v. Havens, 446 U.S. 620, 627-28 (1980) ("a defendant's statements made in response to proper cross-examination reasonably suggested by the defendant's direct examination are subject to otherwise

provided below, no statements or other information provided by your client during the proffer or discussion will be used as evidence against your client in any criminal case."). Accordingly, granting the Defendant's Motion to Suppress would have no new effect.

The Court concludes that the Defendant's Motion to Suppress should be denied.

### III. THE DEFENDANT'S MOTION TO SUPPRESS STOP

The Defendant's Motion to Suppress Stop [Doc. 38] asks the Court to suppress all of the evidence arising from the May 3, 2006, traffic stop of the Defendant's vehicle during which the Defendant was arrested. The Defendant argues that the traffic stop was unlawful because the officers making the stop had neither "a proper charging instrument," nor any "reasonable and articulable suspicion, or probable cause [to believe], that the Defendant was engaged in criminal activity at the time he was stopped." [Doc. 38 at 1]. Thus, the Defendant concludes that the traffic stop violated the rights guaranteed to him by the Fourth Amendment.

In response, the Government points out that the Defendant's Motion merely makes a naked assertion that the traffic stop was unlawful. The Government argues that Defendant's Motion should be denied because it "contains no analysis whatsoever." [Doc. 39 at 1]; see [Doc. 39 at 2] ("This sort of motion practice is frivolous and serves only to waste valuable time and resources of both this Court and the United States.").

---

proper impeachment by the government, albeit by evidence that has been illegally obtained and that is inadmissible on the government's direct case, or otherwise, as substantive evidence of guilt").

A.      Facts

On May 3, 2006, DEA Special Agent Bethel Poston determined based on his ongoing wiretap investigation of the Defendant that the Defendant was planning to receive a large quantity of cocaine sometime that day. Agent Poston began the day working in "the wire room" monitoring the Defendant's telephone communications over two tapped cellular telephones. [Tr. 17]. Agent Poston testified that people began calling the Defendant to request powder cocaine at 10:21 a.m. [Tr. 15]. At that time, Agent Poston believed the Defendant to be at his home at 1217 Bob Kirby Road in Knoxville, Tennessee. [Tr. 17]. On the wire, Agent Poston heard the Defendant tell his callers that he did not have what they needed. [Tr. 17]. Agent Poston testified that the Defendant explained to his callers that he only had crack cocaine–"the hard way"–and that he would go get some powder cocaine to sell them. [Tr. 19-21].

After listening to the first phone call at 10:21 a.m., Agent Poston ordered a surveillance team of other DEA agents to set up on the Defendant. [Tr. 21-22]. Agent Poston testified that the surveillance team was in place outside of the Defendant's home by around 11:30 a.m. [Tr. 24]. At 10:55 a.m., Agent Poston intercepted a call placed by the Defendant to his cousin, Victor Harrison. During that call, the Defendant asked Harrison for "CDs" and "four of them four boxes." [Tr. 22]. Agent Poston testified that the term "CDs" was used by the Defendant as code for "cocaine," and that the term "four box" was used to mean a 4.5 ounce quantity of powder cocaine.[4] Agent Poston interpreted the Defendant's request to Harrison to be for 18 ounces of powder cocaine,

---

[4] Agent Poston testified about the Defendant's use of "code" as follows: "He often used code and some of the code depended on who he was speaking on the telephone with...At other times, he would call the ounces of cocaine 'boxes' or 'CDs' or 'carburetors,' 'four-ways' or 'four barrels.' There are a lot of different references he would use for the weights of cocaine he was buying." [Tr. 14].

approximately "a half-kilo, 500 grams." [Tr. 23]. The Defendant agreed to meet Harrison at the Classy Image wheel shop where Harrison was the manager. [Tr. 23].

At 12:15 p.m., Agent Poston intercepted a call to the Defendant from an unknown male who identified himself as "Gary." [Tr. 24]. Agent Poston testified that Gary asked to purchase "some soft"–meaning powder cocaine–and was told by the Defendant: "[I]t's just hard right now. I'm trying to get it [powder cocaine]." [Tr. 24].

At 12:45 p.m., the Defendant arrived at Classy Image. [Tr. 25]. His arrival was confirmed visually by the surveillance team that was following him. [Tr. 25]. At 12:55 p.m. an unknown person called the Defendant to ask for cocaine. [Tr. 25]. Agent Poston testified that the Defendant told this caller, "I'm doin' it right now. I'll hit you back in about 15 minutes." [Tr. 26]. Agent Poston interpreted this statement to mean that the Defendant planned to acquire cocaine from Harrison inside Classy Image.

At 1:00 p.m., a person who identified himself as "Dave" called the Defendant to request "a ball of soft."[5] [Tr. 26-27]. The Defendant told Dave, "I got that other," and then said that he would call Dave back later. [Tr. 27]. Agent Poston interpreted these statements to mean that the Defendant did not have any powder cocaine, but was planning to acquire some.

At 1:03 p.m., an unknown male called the Defendant. The Defendant told the caller to come to Classy Image. [Tr. 28]. Shortly thereafter, Harrison arrived at Classy Image. [Tr. 29]. Harrison went inside the shop for approximately one hour and a half. [Tr. 30]. The surveillance team visually confirmed the Defendant's departure at 2:17 p.m. [Tr. 29].

---

[5] Agent Poston testified that "a ball of soft" means an "eight ball," or one eighth of an ounce of powder cocaine. [Tr. 14, 28].

At 2:14 p.m., just before the Defendant left Classy Image, Agent Poston intercepted a call to the Defendant from an unknown female. [Tr. 29-30]. Agent Poston testified that this caller said that she wanted "to play pool," and that she had "all of her money."[6] [Tr. 30]. Agent Poston testified that the Defendant told the caller, "I'll call you when I get to the crib. I'm on my way now." [Tr. 30]. Based on this conversation, Agent Poston believed that the Defendant intended to transport cocaine he acquired from Harrison at Classy Image to his home. [Tr. 32-33]. Agent Poston testified that he believed that his interpretation of the Defendant's telephone conversations, in combination with the surveillance team's observations, provided him with probable cause to justify stopping and arresting the Defendant as soon as he left Classy Image. [Tr. 33].

Agent Poston joined the other DEA agents on the surveillance team, and they followed the Defendant's vehicle as it left Classy Image. [Tr. 33-37]. The Defendant ran some brief errands, stopping at a shoe store and a Pack-N-Ship store. [Tr. 33-37]. Agent Poston testified that he believed, based on his experience and his investigation of the Defendant, that the Defendant had not left any of the cocaine he acquired from Harrison at either store. Thus, when the Defendant left the Pack-N-Ship, Agent Poston believed that he still had powder cocaine in his vehicle. [Tr. 38].

Agent Poston testified that he waited to stop the Defendant to arrest him "for tactical reasons." [Tr. 33]. Agent Poston explained that his wiretap investigation of the Defendant and his cooperators was ongoing, and that he did not want to jeopardize the investigation by somehow alerting the Defendant's cooperators that the Defendant had been arrested. [Tr. 33]. Specifically,

---

[6] Agent Poston testified that the phrase "play pool" commonly means "buy cocaine." The phrase refers to an "eight ball" of cocaine, a quantity that is commonly sold at the street level. See [Tr. 14, Testimony of Agent Poston] ("Some would refer to the cocaine they wanted to purchase in terms of–they would say, 'I need to play a game of pool,' which is kind of a bleed-over reference to an eight ball.").

Agent Poston did not want any of the Defendant's cooperators or acquaintances to observe the Defendant's arrest. [Tr. 33]. To prevent such observation, Agent Poston wanted to stop the Defendant to arrest him in "a safe location [where] a minimal amount of [the] public would see him get pulled over and arrested." [Tr. 33].

Agent Poston chose to initiate a traffic stop of the Defendant's vehicle as it was traveling westbound on Bob Gray Road. [Tr. 39]. Agent Poston testified that he initiated the stop by activating the emergency lights on his unmarked police vehicle. [Tr. 39]. Agent Poston testified that he immediately approached the Defendant and placed him under arrest. [Tr. 39]. He stated that he did not search the Defendant's vehicle or question him at the scene of the arrest. [Tr. 40]. Agent Poston explained that he wanted to execute the arrest as quickly as possible so as to minimize the risk that anyone would see the Defendant taken into custody. [Tr. 40] ("We were in the middle of the road, literally a two-lane road. We had to move the cars and get going."). Another DEA agent drove the Defendant's vehicle immediately to the DEA office. [Tr. 40]. A plastic sandwich bag with 151 grams of cocaine powder was found in the Defendant's vehicle. [Tr. 41].

### A. Analysis

The Fourth Amendment protects citizens against unreasonable searches or seizures and provides that "no Warrants shall issue, but upon probable cause." U.S. Const. amend IV. But the Fourth Amendment does not prohibit police from making warrantless public arrests when they have probable cause to believe that the arrestee is committing or has committed a felony. See United States v. Watson, 423 U.S. 411, 416-17 (1976) ("there is nothing in the Court's prior cases indicating that under the Fourth Amendment a warrant is required to make a valid arrest for a

felony"); id. at 423 ("Law enforcement officers may find it wise to seek arrest warrants where practicable to do so, and their judgments about probable cause may be more readily accepted where backed by a warrant issued by a magistrate. But we decline to transform this judicial preference into a constitutional rule when the judgment of the Nation and Congress has for so long been to authorize warrantless public arrests on probable cause...") (internal citations omitted); Gerstein v. Pugh, 420 U.S. 103, 113 (1975) (noting that the Supreme Court "has never invalidated an arrest supported by probable cause solely because the officers failed to secure a warrant").

A warrantless arrest in public is permitted when, based upon the totality of the circumstances, there is probable cause to believe that the arrestee is committing or has committed a felony. See Watson, 423 U.S. at 417 (the necessary inquiry is "not whether there was a warrant or whether there was time to get one, but whether there was probable cause for the arrest"); id. at 418 ("The cases construing the Fourth Amendment reflect the ancient common-law rule that a peace officer was permitted to arrest without a warrant for a misdemeanor or felony committed in his presence as well as for a felony not committed in his presence if there was reasonable grounds for making the arrest.") (citations omitted); Carroll v. United States, 267 U.S. 132, 156 (1925) ("the usual rule is that a police officer may arrest without a warrant one believed by the officer upon reasonable cause to have been guilty of a felony..."); see also Illinois v. Gates, 462 U.S. 213, 230-31 (1983) (explaining that a probable cause determination must be made with a "totality-of-the-circumstances approach"). "Probable cause is defined as reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion[.]" United States v. Bennett, 905 F.2d 931, 934 (6th Cir. 1990). "[P]robable cause is a fluid concept–turning on the assessment of probabilities in particular factual contexts–not readily, or even usefully, reduced to a neat set of legal

rules." Gates, 462 U.S. at 232. These probabilities "are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." Id. at 231.

In this case, the Court finds that at the time he arrested the Defendant, Agent Poston had probable cause to believe that the Defendant possessed with the intent to distribute a quantity of cocaine in violation of 21 U.S.C. § 841(a)(1)–a felony offense. Based on the Defendant's telephone conversations and the observations of the surveillance team, Agent Poston had reasonable grounds to believe that the Defendant had a quantity of cocaine with him in his vehicle at the time of the arrest. Thus, the Court finds that Agent Poston did not violate the Defendant's Fourth Amendment rights when he stopped the Defendant's vehicle and arrested the Defendant in public. Accordingly, the Court concludes that the Defendant's Motion to Suppress Stop [Doc. 38] should be denied.

**III. CONCLUSION**

For the foregoing reasons, it is **RECOMMENDED** that the Defendant's Motion to Suppress Wiretap **[Doc. 36]**, Motion to Suppress **[Doc. 37]**, and Motion to Suppress Stop **[Doc. 38]** be **DENIED**.[7]

                                            Respectfully Submitted,

                                            s/ H. Bruce Guyton
                                          United States Magistrate Judge

---

[7] Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Crim. P. 59(b)(2) (as amended). Failure to file objections within the time specified waives the right to review by the District Court. Fed. R. Crim. P. 59(b)(2); see United States v. Branch, 537 F.3d 582, 587 (6th. Cir. 2008); see also Thomas v. Arn, 474 U.S. 140, 155 (1985) (providing that failure to file objections in compliance with the required time period waives the right to appeal the District Court's order). The District Court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive, or general. Mira v. Marshall, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370, 1373 (6th Cir. 1987).