UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

ERIC HIGGINS,                              )
                                           )
            Petitioner,                    )
                                           )
v.                                         )      Nos.   3:12-CV-636-TAV
                                           )             3:08-CR-150-TAV-HBG-1
UNITED STATES OF AMERICA,                  )
                                           )
            Respondent.                    )

## MEMORANDUM OPINION

Before the Court now is Petitioner's pro se motion to vacate, set aside, or correct his

sentence pursuant to 28 U.S.C. § 2255 [Doc. 109]. The government filed its response [Doc.

111], and Petitioner filed a reply [Doc. 112]. For the reasons set forth herein, Petitioner's motion

[Doc. 109] will be **DISMISSED WITH PREJUDICE.**

## I.      BACKGROUND

In October 2010, pursuant to a written Rule 11(c)(1)(C) plea agreement with the United

States, Petitioner pled guilty to conspiring to possess and distribute at least 50 grams of cocaine

base, in violation of 21 U.S.C. §§ 846 and 841(a)(1), (b)(1)(A)(iii) (Count One), possessing a

firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c) (Count

Two), and conspiring to commit money laundering, in violation of 18 U.S.C. § 1956(h) (Count

Five) [Doc. 73 ¶ 1]. Petitioner agreed to a total sentence of 180 months' imprisonment, and the

United States agreed to dismiss Counts Three and Four [*Id.* ¶¶ 2, 6].

After Petitioner was indicted but before he pleaded guilty, the President signed into law

the Fair Sentencing Act of 2010 ("FSA"), Pub. L. 111-220, 124 Stat. 2372 (Aug. 3, 2010), which

amended 21 U.S.C. § 841 to require larger quantities of crack cocaine to trigger mandatory

minimum sentences. Specifically, the FSA amended the sentencing provisions in § 841(b)(1) by raising the amount of cocaine base necessary to trigger the ten-year mandatory minimum from 50 to 280 grams and the amount necessary to trigger the five-year mandatory minimum from 5 to 28 grams. FSA § 2, 124 Stat. at 2372. The law was silent on whether these amended provisions applied to defendants convicted before, but sentenced after, its enactment. *See generally id.*

Using the 2010 version of the United States Sentencing Guidelines, Petitioner's probation officer found him responsible for 145.94 grams of crack cocaine and 151.5 grams of cocaine hydrochloride, for a combined marijuana equivalent of 551.45 kilograms and a base offense level of 28 [PSR ¶¶ 22, 30]. Grouping the drug and money-laundering conspiracies under section 3D1.2(c) yielded an adjusted offense level of 30 [*Id.* ¶¶ 27, 36, 37], and, when combined with the three-level reduction for acceptance of responsibility under sections 3E1.1(a) and (b), a total offense level of 27 [*Id.* ¶¶ 42, 43]. After noting Petitioner's criminal history category supported an initial advisory range of 70 to 87 months [*Id.* ¶ 52], she went on to explain that Petitioner's stipulation to at least 50 grams of cocaine base triggered application of § 841(b)(1)(A)'s pre-FSA 120-month mandatory minimum [*Id.* ¶¶ 81, 82]. The probation officer concluded by noting the firearm offense required imposition of a minimum five year term to run consecutive to whatever sentence the Court imposed for the drug and money laundering offenses [*Id.* ¶¶ 28, 44, 82 (explaining section 3D1.1(b)(1) prevents grouping Count Two and thus requires an additional consecutive five-year term of incarceration)]. Petitioner ultimately received a combined 180-month term—120 months for the drug and money laundering conspiracies followed by 60 months for the firearm offense—consistent with the terms of the Rule 11(c)(1)(C) plea agreement entered on September 24, 2010 [Doc. 73 ¶ 6; Doc. 85]. Petitioner appealed his sentence to the Sixth Circuit [Doc. 87].

2

Despite initially requesting the Sixth Circuit hold the case in abeyance until the United States Supreme Court issued a decision *Dorsey v. United States*, 132 S. Ct. 2321 (2012) [Doc. 109-2 pp. 1–3 (noting the decision would provide significant direction for proper resolution of Petitioner's claim)], appellate counsel eventually advised that Petitioner voluntarily dismiss the action before an opinion emerged [Doc. 109-1 pp. 1–3]. As support, counsel outlined a number of risks associated with winning including potential government withdraw from plea deal, revival of Counts Three and Four, and renewal of the career offender enhancement [*Id.*]. Petitioner agreed and withdrew his appeal [Doc. 107 (dismissing appeal on May 22, 2012)].

Shortly thereafter, on June 21, 2012, the Supreme Court issued its opinion in *Dorsey*, holding that the FSA's "new, lower mandatory minimums apply to the post-Act sentencing of pre-Act offenders." *See Dorsey*, 132 S. Ct. at 2321, 2335 (reversing earlier Sixth Circuit precedent finding the reduced penalties applied only to offensive conduct occurring after its enactment); *United States v. Carradine*, 621 F.3d 575, 580 (6th Cir. 2010) (holding that pre-FSA penalties apply to conduct committed prior to the FSA's enactment). Petitioner filed the current, timely § 2255 motion for collateral relief on December 10, 2012, citing *Dorsey* and ineffective assistance of appellate counsel as grounds for relief [Doc. 109].

## II.     STANDARD OF REVIEW AND ANALYSIS

To obtain relief under 28 U.S.C. § 2255, a petitioner must demonstrate "(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law . . . so fundamental as to render the entire proceeding invalid." *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (quoting *Mallett v. United States*, 334 F.3d 491, 496–97 (6th Cir. 2003)). He "must clear a significantly higher hurdle than would exist on direct appeal" and establish a "fundamental defect in the proceedings which necessarily results in a complete

3

miscarriage of justice or an egregious error violative of due process." *Fair v. United States*, 157 F.3d 427, 430 (6th Cir. 1998).

The petition sets forth two grounds of collateral attack. First, Petitioner cites the Supreme Court's opinion in *Dorsey* as proof this Court erred when it sentenced him to 120 months' incarceration on the drug conspiracy despite stipulated quantities below the 280 grams required to trigger the post-FSA 10-year minimum [Doc. 109 pp. 8–9, 12–13 (arguing his sentence was imposed "in contravention of the laws of the United States" and merits 2255 relief as a miscarriage of justice "otherwise subject to collateral attack")]. Second, Petitioner claims appellate counsel rendered constitutionally deficient representation when he advised Petitioner withdraw the appeal despite knowledge that a favorable ruling in *Dorsey* would force the Sixth Circuit to remand his case for resentencing [*Id.* at 9–12 (suggesting this Court would have imposed a lesser sentence reflecting the post-FSA five-year mandatory minimum on remand)].

## A.    Ground One: Collateral Relief Under *Dorsey v. United States*

Petitioner's first ground for collateral relief asserts that the Supreme Court's decision in *Dorsey*—which extended application of the post-FSA statutory minimums to all defendants sentenced after their enactment regardless of the date on which their illicit conduct occurred— conclusively demonstrates that the Court erred when it sentenced him to 120 months' incarceration for conspiring to distribute crack cocaine in violation of §§ 846 and 841(a)(1) [Doc. 109 p. 8]. After noting that the FSA decreased the mandatory minimum for possession with intent to distribute 50 grams or more of cocaine base from ten to five-years, Petitioner claims that proper application of the new provision to his case would have resulted in adoption of a concurrent 70-month terms for the drug and money laundering offenses instead of the 120-month term actually imposed [*Id.* at 13 (claiming the Court, when informed of his lower five-

year mandatory minimum, would have opted for a bottom of the guidelines sentence mirroring that adopted with respect to the money laundering offense); *see also* Doc. 85 (explaining his combined 120-month sentence resulted from imposition of a 120-month term for the drug offense to run concurrent with a 70 month term for the money laundering offense)]. The Court finds Petitioner has failed to demonstrate an entitlement to relief for three reasons: Ground One does not present a cognizable claim for collateral relief, has been procedurally defaulted, and was waived in the September 24, 2010 plea agreement.

### 1.    Cognizability

Section 2255 provides limited avenues by which prisoners can seek collateral relief: sentences imposed "in violation of the Constitution or laws of the United States, . . . without jurisdiction[,] . . . in excess of the maximum authorized by law, or otherwise subject to collateral attack." 28 U.S.C. § 2255; *see also United States v. Gibson*, 424 F. App'x 461, 465 (6th Cir. 2011) ("A motion brought under § 2255 must allege[:] . . . (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of . . . law . . . so fundamental as to render the entire proceeding invalid." (quoting *United States v. Doyle*, 631 F.3d 815, 817 (6th Cir. 2011))). Petitioner does not claim Ground One asserts a constitutional violation [Doc. 109 pp. 8–9], and the combined sentence for the drug and money laundering conspiracy—120 months' incarceration [Doc. 85]—falls safely within the maximum authorized by law—40 years under § 841(b)(1)(A)(iii) and 20 years under § 1956(h). *See generally* 21 U.S.C. § 841(b)(1)(A)(iii) (2012); 18 U.S.C. § 1956(h) (2012); *see also Dorsey*, 132 S. Ct. at 2335 (explaining the post-FSA reductions apply to all individuals sentenced after its enactment). As such, Petitioner is forced to rely on § 2255's catch-all provision—sentences "otherwise subject to collateral relief" [*Compare* Doc. 109 pp. 12–13 (citing the timing of *Dorsey* and

5

absence of any other avenues for relief as examples of why his case constitutes a "miscarriage of justice" cognizable under § 2255's catch-all provision), *with* Doc. 111 (skipping the cognizability issue altogether)].

The Supreme Court has said that a non-jurisdictional, non-constitutional error of law will support a collateral attack only where "the claimed error constitute[s] 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *United States v. Addonizio*, 442 U.S. 178, 185 (1979) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1979)); *Grant v. United States*, 72 F.3d 503, 506 (6th Cir. 1996); *see also Self v. United States*, 434 F. Supp. 548, 551 (E.D. Tenn. 1977) (explaining not all errors of law are cognizable on collateral review, only those where the claimed error constituted a "miscarriage of justice" (quoting *Davis v. United States*, 417 U.S. 333, 346 (1974)). The hurdle is intentionally high, significantly greater than that faced on direct appeal, *United States v. Frady*, 456 U.S. 152 (1982), and requires presentation of "an egregious error inconsistent with the rudimentary demands of fair procedure." *Rhea v. United States*, No. 2:06-cr-33, 2010 U.S. Dist. LEXIS 111206, at * 7 (E.D. Tenn. Oct. 19, 2010) (citing *Reed v. Farley*, 512 U.S. 339, 354 (1994)). While sentencing errors generally fall short of this standard, *see e.g.*, *Sun Bear v. United States*, 644 F.3d 700, 704 (8th Cir. 2011); *Welch v. United States*, 604 F.3d 408, 412 (7th Cir. 2010); *United States v. Mikalajunas*, 186 F.3d 490, 496 (4th Cir. 1999); *Jones v. United States*, 178 F.3d 790, 796 (6th Cir. 1999); *Graziano v. United States*, 83 F.3d 587, 590 (2nd Cir. 1996), one exception exists where the error results in a sentence "in excess of the maximum authorized by law." *Welch*, 604 F.3d at 412–13; *United States v. Shipp*, 589 F.3d 1084, 1091 (10th Cir. 2009). There is some dispute, however, as to whether this is the only exception. *Compare Sun Bear*, 644 F.3d at 705 (finding the petitioner failed to state cognizable 2255 claim where alleged sentencing error did

6

not result in a sentence "in excess of the maximum authorized by law"), *with Narvaez v. United States*, 674 F.3d 621, 630 (7th Cir. 2011) (suggesting "a special and very narrow exception" exists where a "post-conviction clarification in the law . . . render[s] the sentencing court's decision unlawful."), *and United States v. O'Neal-Sloane*, 371 F. App'x 298, 301 (3rd Cir. 2010) ("Arguably, an incorrect classification as a career offender would be a miscarriage of justice but [the petitioner] does not present such a case."). The Court finds that it need not resolve this dispute to conclude that Ground One fails to state a cognizable claim.

Petitioner entered into a Rule 11(c)(1)(C) plea agreement with the United States on September 24, 2012 [Doc. 73]. *See* Fed. R. Crim. P. 11(c)(1)(C) (permitting parties to agree that a specific sentence "is the appropriate disposition of the case"). In that agreement, the parties stipulated to a total sentence of 180 months, consisting of a single 120-month concurrent sentence for the drug and money laundering offenses followed by 60-month sentence for the firearm offense [*Id.* ¶ 6]. In exchange, the United States dropped Counts Three and Four, withdrew its request for a career offender enhancement that would have carried a 20-year statutory minimum, and agreed to a three-point reduction in guideline range for acceptance of responsibility [Doc. 73 ¶¶ 2, 7; 109-1 pp. 2–3]. Petitioner does not dispute that he entered the agreement voluntarily and with knowledge of its consequences [*see generally* Doc. 109; see also Doc. 73 ¶¶ 3, 12 (acknowledging he was pleading guilty because he was in fact guilty); Doc. 105 pp. 5–6, 8, 9–10, 12–14, 18–19 (acknowledging the terms and consequences of his plea)].

Rule 11(c)(1)(C) plea agreements are unique in that a "sentence imposed pursuant to [such an] agreement is contractual and not based upon the guidelines." *United States v. Febrez*, 391 F. App'x 329, 331 (4th Cir. 2010) (citing *United States v. Cieslowski*, 410 F.3d 353, 364 (7th Cir. 2005)); *see generally United States v. Hodge*, 306 F. App'x 910, 914 (6th Cir. 2009). In

other words, absent an express statement in the agreement making the sentence dependent upon a guideline calculation, a sentence imposed pursuant to a Rule 11(c)(1)(C) plea is grounded in the negotiated terms alone. *United States v. Rivera-Martinez*, 607 F.3d 283, 287 (1st Cir. 2010); *see also United States v. Kling*, 516 F.3d 702, 704 (8th Cir. 2008) (explaining that "[a] plea agreement under Rule 11(c)(1)(C), like all plea agreements, is binding on both the government and the defendant, but . . . unique in that [it] . . . bind[s] . . . the court" after acceptance); *United States v. Pacheco-Navarette*, 432 F.3d 967, 972 (9th Cir. 2005) ("[T]he district court is not permitted to deviate from . . . sentences stipulated in [Rule 11(c)(1)(C)] agreements."); *United States v. Williams*, 260 F.3d 160, 165 (2nd Cir. 2001) ("[A] district court may accept or reject a Rule 11(c)(1)(C) sentence bargain, but may in no event modify it."). Petitioner's plea contains no such statement and thus the Court is forced to conclude that his combined 120-month was derived from the carefully negotiated terms of his Rule 11(c)(1)(C) agreement, not in reference to § 841(b)(1)(A)(iii)'s pre-FSA minimum.

Under these facts, the Court finds imposition of Petitioner's sentence without consideration of the post-FSA penalties cannot be characterized as a miscarriage of justice or egregious error inconsistent with the rudimentary demands of fair procedure. *Compare United States v. Peterson*, 916 F. Supp. 2d 102, 108–110 (D.D.C. 2013) (finding petitioner failed to state cognizable claim where Rule 11(c)(1)(C) plea agreement, not asserted sentencing error, was origin of sentence imposed), w*ith Adams v. United States*, No. 1:11-cv-250, 2012 WL 5365092, at *5–6 (E.D. Tenn. Oct. 30, 2012) (reaching FSA issue where the petitioner's sentence was not grounded in a Rule 11(c)(1)(C) agreement), *and Thomason v. United States*, No. 12-208, 2013 U.S. Dist. LEXIS 27223, at *5 (W.D. Pa. Feb. 28, 2013) (same). Thus, Petitioner's first ground fails due to the absence of a cognizable basis for collateral relief. *See United States v. Purifoy*,

No. 2:08-cr-20238, 2014 U.S. Dist. LEXIS 59347, at *5–6 (E.D. Mich. Apr. 3, 2014) (dismissing claim for lack of cognizability where sentence did not result from "fundamental unfairness" or "breakdown in the trial process"); *Lane v. United States*, 65 F. Supp. 2d 587, 589–90 (E.D. Mich. 1999) (dismissing claim in absence of miscarriage of justice because the sentence was not "otherwise subject to collateral attack"); *see also Davis*, 417 U.S. at 346 (explaining only "errors of law" rising to the level of a miscarriage of justice are cognizable on collateral review).

### 2.      Procedural Default

Even if Ground One were cognizable under § 2255, the Court finds that Petitioner's failure to fully litigate the claim on direct appeal is independently fatal to his request for relief. *See Shropshire v. United States*, No. 1:08-CV-261, 2011 U.S. Dist. LEXIS 103765, at *37 (E.D. Tenn. Sept. 13, 2011) (explaining that a § 2255 motion is not a substitute for properly raising issues on direct appeal and failure to do so subjects the claim to procedural default).  The fact that Petitioner initially raised the challenge in his direct appeal does not obviate the fact that its subsequent voluntary dismissal amounted to procedural default.  *United States v. Mikalajunas*, 186 F.3d at 492–93, *overruled on other grounds by Dretke v. Haley*, 541 U.S. 386 (2004); *United States v. Kirksey*, No. 04-cv-71992, 2007 U.S. Dist. LEXIS 17337, at *7–8 (E.D. Ky. Mar. 12, 2007); *see also Mitchell v. United States*, No. 95-2149, 1996 U.S. App. LEXIS 5793, at *4 (7th Cir. Mar. 15, 1996) ("[B]ecause [the petitioner] did not pursue this claim on direct appeal when he could have, he forfeited it.").

"In the case where the [petitioner] has failed to assert his claims on direct appeal[,] . . . in order to raise them in a § 2255 motion he also must show either that (1) he had good cause for his failure to raise such arguments and he would suffer prejudice if unable to proceed, or (2) he is actually innocent." *Regalado v. United States*, 334 F.3d 520, 528 (6th Cir. 2003); *accord Frady*,

9

456 U.S. at 167–68. The "hurdle" to excuse procedural default is "intentionally high[,] . . . for respect for the finality of judgments demands that collateral attacks generally not be allowed to do service for an appeal." *Elzy v. United States*, 205 F.3d 882, 884 (6th Cir. 2000). Petitioner does not assert actual innocence and neither the timing of *Dorsey* nor actions of appellate counsel excuse the underlying default.

"[F]utility cannot constitute cause if it means simply that a claim was 'unacceptable to [a] particular court at [a] particular time.'" *Cvijetinovic v. Eberlin*, 617 F.3d 833, 839 (6th Cir. 2010) (quoting *Bousley v. United States*, 523 U.S. 614, 623 (1998)). In other words, the fact that the Sixth Circuit might have been "unreceptive to a particular argument at the time [it should have been raised] cannot excuse failure to [litigate] the claim." *Wheeler v. United States*, 328 F. App'x 632, 636 (6th Cir. 2009). Thus, the fact that the Sixth Circuit would likely have rejected the proposed challenge under *United States v. Carradine*—which limited application of the FSA to individuals convicted of conduct that took place after its enactment and was ultimately overturned by *Dorsey*—does not excuse Petitioner's failure to fully litigate Ground One on appeal. *See, e.g.*, *Gibson*, 424 F. App'x at 466 (denying request to amend § 2255 based on futility where proposed claim was initially raised in voluntarily dismissed appeal); *Hall v. United States*, No. 2:01-cr-27, 2013 U.S. Dist. LEXIS 137382, at *6 (E.D. Tenn. Sep. 25, 2013) (finding petitioner defaulted claim that would have been meritless under then-existing Sixth Circuit law).

Second, while it is true that ineffective assistance of counsel during the appeal process can serve as a basis for excusing procedural default, *Sullivan v. United States*, 587 F. App'x 935, 942–45 (6th Cir. 2014), a petitioner attempting to rely on defective assistance to establish good cause bears the burden of demonstrating constitutionally deficient performance. *Id.* For reasons discussed in Ground Two, the Court finds Petitioner did not receive ineffective assistance of

appellate counsel and as a result, has failed to establish good cause for default of Ground One. *See Acevedo v. United States*, No. 1:10-CV-46, 2012 U.S. Dist. LEXIS 9817, at *19–20 (E.D. Tenn. Jan. 27, 2012) (finding Petitioner failed to establish cause for procedural default where he was unable to establish constitutionally deficient assistance on appeal). Failure to establish cause necessarily means that the Court need not consider whether Petitioner can establish prejudice.[1]

### 3.    Waiver

In addition to the issues outlined above, the Court finds that Petitioner knowingly and voluntarily waived his right to raise Ground One in the plea agreement. Specifically, Petitioner waived "the right to file any motions or pleadings pursuant to 28 U.S.C. § 2255 or to collaterally attack [his] convictions . . . or sentence" except in cases of "ineffective assistance of counsel or prosecutorial misconduct not know to [him] at the time of the entry of the judgment" [Doc. 73 ¶ 10]. The Court reviewed this provision with Petitioner during the change of plea process; he affirmed that he understood its implications [Doc. 105 p. 11]. Petitioner does not dispute the volitional or knowing nature of the foregoing waiver and, as a result, cannot raise Ground One.

### B.    Ground Two: Ineffective Assistance of Appellate Counsel

A petitioner alleging ineffective assistance must satisfy the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1987). First, the petitioner must establish, by identifying specific acts or omissions, that counsel's performance was deficient and that counsel did not provide "reasonably effective assistance," *id.*, as measured by "prevailing professional

---

[1] To the extent that Petitioner attempts to excuse default of Ground One based on the fact that it qualifies as a cognizable claim for collateral relief under § 2255's catch-all provision, *see Grant*, 72 F.3d at 506 (explaining "non-constitutional claims not raised . . . on direct appeal are waived for collateral review except where the errors amount to something akin to denial of due process,"), the Court reiterates that the claim does not rise to the level of a miscarriage of justice, *see id.* (explaining an error is akin to denial of due process where it is "so positively outrageous as to indicate a 'complete miscarriage of justice'"), and thus cannot qualify under the exception.

11

norms," *Rompilla v. Beard*, 545 U.S. 374, 380 (2005). Counsel's assistance is presumed to have been effective, and the petitioner bears the burden of showing otherwise. *Mason v. Mitchell*, 320 F.3d 604, 616–17 (6th Cir. 2003); *see also Strickland*, 466 U.S. at 689 (a reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that . . . the challenged action might be considered sound . . . strategy" (internal citation omitted)).

Second, the petitioner must demonstrate "a reasonable probability that, but for [counsel's acts or omissions], the result of the proceedings would have been different." *Strickland*, 466 U.S. at 694. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691; *see also Smith v. Robbins*, 528 U.S. 259, 285–86 (2000). If a petitioner fails to prove that he sustained prejudice, the Court need not decide whether counsel's performance was deficient. *See United States v. Hynes*, 467 F.3d 951, 970 (6th Cir. 2006) (holding that alleged "flaws" in trial counsel's representation did not warrant a new trial where the claims, even if true, did not demonstrate that the jury would have reached a different conclusion).

Petitioner articulates a single theory of ineffective assistance: appellate counsel rendered constitutionally deficient advice when he suggested Petitioner voluntarily withdraw his appeal before the Supreme Court issued its opinion in *Dorsey* [Doc. 109 pp. 9–12]. He goes on to argue that, had the appeal not been withdrawn, the Sixth Circuit would have been forced to remand his case for resentencing in light of the newly applicable post-FSA mandatory minimums [*Id.* at 9 (arguing he would have received a shorter term of incarceration as a result)]. The claim fails for lack of deficient performance; the Court need not address *Strickland*'s second prong.

12

Despite citing numerous cases involving the complete omission of meritorious issues on appeal, *see e.g.*, *Henness v. Bagley*, 644 F.3d 308, 317 (6th Cir. 2011) (explaining failure to raise an issue on appeal amounts to ineffective assistance where there was a reasonable probability that inclusion of the issue would have changed the result of the appeal); *McFarland v. Yukins*, 356 F.3d 688, 711 (6th Cir. 2004) (noting courts should consider whether the omitted issues were "significant and obvious," such that the decision to omit was an unreasonable one which only an incompetent attorney would adopt); *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002) ("[W]hen ignored issues are clearly stronger than those presented . . . the presumption [is] overcome." (citing *Gary v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986)), Petitioner appears to base Ground Two on the assertion that counsel provided constitutionally deficient advice when he suggested the withdraw of a properly raised, potentially meritorious question [Doc. 109 pp. 10–11]. A party resting his ineffective assistance claim on purportedly deficient advice has the burden of establishing a deviation from "reasonable professional judgment." *Strickland*, 466 U.S. at 690. This evaluation must be made "from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986); *see also Griffin v. United States*, 109 F.3d 1217, 1220 n.4 (7th Cir. 1997) ("[V]oluntariness of [foregoing an appeal] depends on whether counsel's advice was within the range of competence demanded of attorney's in criminal cases." (quoting *Hill v. Lockhart*, 474 U.S. 52, 56 (1985))).

Applying this standard to the current case, the Court finds that Petitioner has failed to establish that counsel's advice to waive the appeal constituted deficient performance. Even if the Court accepts his assertion that the only reason that he withdrew the appeal was counsel's advice, Petitioner cannot succeed because he cannot prove that the advice received fell outside

13

"the range of competence demanded of attorneys in criminal cases." *United States v. Williams*, 374 F. Supp. 2d 173, 175 (D.D.C. 2005).

While neither party disputes that appellate counsel did in fact advise Petitioner not "proceed in [his] appeal" [Doc. 109 pp. 10–11; Doc. 109-1 p. 1 ("To be absolutely clear, I am not advising you to proceed in your appeal.")], the letter in which he conveyed that advice makes clear that the suggestion was predicated on several legitimate concerns. For example, a favorable ruling by the Sixth Circuit in light of *Dorsey* would have provided the United States with grounds for backing out of the Rule 11(c)(1)(C) agreement, reinstating Counts Three and Four, amending Counts One and Three of the Indictment to match the post-FSA 280 gram requirement under § 841(b)(1)(A), and filing a renewed notice of intent to seek career offender enhancement—which itself carried a 20-year minimum term of incarceration [Doc. 109-1 pp. 1–3 (outlining the risks associated with a victory at the Sixth Circuit and explaining that, even if *Dorsey* were to be decided in their favor, there would be no guarantee of a shorter sentence)]. In other words, counsel perceived the significant possibility that any new sentence would be "as long as, or longer than, [Petitioner's] current [one]" [*Id.*]; the prosecutor threatened as much by stating that he "would [never] . . . negotiate a plea . . . more favorable" than the one being appealed [*Id.* (explaining that, "[i]f the prosecutor does not change his stated position, the only possible way for [Petitioner] to get a shorter sentence would be to go to trial and be found not guilty.")]. It was this "tremendous risk"—the potential for a substantially longer sentence [*Id.* at 3 (explaining, if prosecutor followed through with treat to seek everything consecutively, Petitioner would face "at least 50 years" in prison)]—that spurred counsel's advice [*Id.* at 2–3 ("You currently have 15 years in prison, with five years' supervised release. If we prevail, the prosecutor will have no obligation to offer you a deal that short.")]. In light of the circumstances

14

known at the time, the Court cannot find that the foregoing suggestion amounted to a deviation from "reasonable professional judgment" or "the range of competence demanded of [an] attorney[] in [a] criminal case." *See United States v. Brunshtein*, 545 F. Supp. 2d 357, 361–63 (S.D.N.Y. 2008) (finding counsel had not deviated from professional norms by advising his client voluntarily withdraw direct appeal where that advice was objectively reasonable in light of the facts before him); *Williams*, 374 F. Supp. 2d at 175 (rejecting ineffective assistance claim based on counsel's advice that the petitioner withdraw his direct appeal where that suggestion was objectively reasonable under the circumstances). Failure to establish deficient performance obviates any need to address the presence or absence of prejudice.

## III. CONCLUSION

For the reasons discussed above, Petitioner's § 2255 motion [Doc. 109] will be **DISMISSED WITH PREJUDICE**. The Court will **CERTIFY** any appeal from this action would not be taken in good faith and would be totally frivolous. Therefore, this Court will **DENY** Petitioner leave to proceed *in forma pauperis* on appeal. *See* Rule 24 of the Federal Rules of Appellate Procedure. Petitioner having failed to make a substantial showing of the denial of a constitutional right, a certificate of appealability **SHALL NOT ISSUE**. 28 U.S.C. § 2253; Rule 22(b) of the Federal Rules of Appellate Procedure.

**ORDER ACCORDINGLY.**


s/ Thomas A. Varlan
CHIEF UNITED STATES DISTRICT JUDGE

15